County of Onondaga v State of New York (2025 NY Slip Op 02818)

County of Onondaga v State of New York

2025 NY Slip Op 02818

Decided on May 7, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 7, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, SMITH, DELCONTE, AND HANNAH, JJ.

415 CAE 25-00494

[*1]COUNTY OF ONONDAGA, ONONDAGA COUNTY LEGISLATURE AND J. RYAN MCMAHON, II, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ONONDAGA COUNTY EXECUTIVE, PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK, KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DUSTIN M. CZARNY, IN HIS CAPACITY AS COMMISSIONER OF ONONDAGA COUNTY BOARD OF ELECTIONS, DEFENDANTS-APPELLANTS, ET AL., DEFENDANT. (ACTION NO. 1.)
COUNTY OF NASSAU, NASSAU COUNTY LEGISLATURE AND BRUCE A. BLAKEMAN, INDIVIDUALLY AND AS A VOTER AND IN HIS OFFICIAL CAPACITY AS NASSAU COUNTY EXECUTIVE, PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK AND KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS. (ACTION NO. 2.) 
COUNTY OF ONEIDA, ONEIDA COUNTY BOARD OF LEGISLATORS, ANTHONY J. PICENTE, JR., INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ONEIDA COUNTY EXECUTIVE AND ENESSA CARBONE, INDIVIDUALLY AND AS A VOTER AND IN HER CAPACITY AS ONEIDA COUNTY COMPTROLLER, PLAINTIFFS-RESPONDENTS, 
v
STATE OF NEW YORK AND KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS.
(ACTION NO. 3.) 
COUNTY OF RENSSELAER, STEVEN F. MCLAUGHLIN, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS RENSSELAER COUNTY EXECUTIVE AND RENSSELAER COUNTY LEGISLATURE, PLAINTIFFS-RESPONDENTS,
[*2]
v
STATE OF NEW YORK AND KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS. (ACTION NO. 4.) 
JASON ASHLAW, ET AL., PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK, KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS, ET AL., DEFENDANTS. (ACTION NO. 5.) 
COUNTY OF ROCKLAND AND EDWIN J. DAY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS ROCKLAND COUNTY EXECUTIVE, PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK, DEFENDANT-APPELLANT. (ACTION NO. 6.)
STEVEN M. NEUHAUS, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ORANGE COUNTY EXECUTIVE, ET AL., PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK, KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS, ET AL., DEFENDANTS. (ACTION NO. 7.)
COUNTY OF DUTCHESS, DUTCHESS COUNTY LEGISLATURE AND SUSAN J. SERINO, INDIVIDUALLY AND AS A VOTER AND IN HER CAPACITY AS DUTCHESS COUNTY EXECUTIVE, PLAINTIFFS-RESPONDENTS,
v
STATE OF NEW YORK AND KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK, DEFENDANTS-APPELLANTS. (ACTION NO. 8.)

LETITIA JAMES, ATTORNEY GENERAL, ALBANY (SARAH L. ROSENBLUTH OF COUNSEL), FOR DEFENDANTS-APPELLANTS STATE OF NEW YORK AND KATHLEEN HOCHUL, IN HER CAPACITY AS GOVERNOR OF STATE OF NEW YORK. 
MACKENZIE HUGHES LLP, SYRACUSE (W. BRADLEY HUNT OF COUNSEL), FOR DEFENDANT-APPELLANT DUSTIN M. CZARNY, IN HIS CAPACITY AS COMMISSIONER OF ONONDAGA COUNTY BOARD OF ELECTIONS. 
HANCOCK ESTABROOK, LLP, SYRACUSE (EDWARD D. CARNI OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS COUNTY OF ONONDAGA, ONONDAGA COUNTY LEGISLATURE, AND J. RYAN MCMAHON, II, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ONONDAGA COUNTY EXECUTIVE.
ROBERT F. JULIAN, P.C., UTICA, FOR PLAINTIFFS-RESPONDENTS COUNTY OF [*3]ONEIDA, ONEIDA COUNTY BOARD OF LEGISLATORS, ANTHONY J. PICENTE, JR., INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ONEIDA COUNTY EXECUTIVE, AND ENESSA CARBONE, INDIVIDUALLY AND AS A VOTER AND IN HER CAPACITY AS ONEIDA COUNTY COMPTROLLER.
CAROLINE E. BLACKBURN, COUNTY ATTORNEY, POUGHKEEPSIE, FOR PLAINTIFFS-RESPONDENTS COUNTY OF DUTCHESS, DUTCHESS COUNTY LEGISLATURE AND SUSAN J. SERINO, INDIVIDUALLY AND AS A VOTER AND IN HER CAPACITY AS DUTCHESS COUNTY EXECUTIVE.
GENOVA BURNS LLP, NEW YORK CITY (ANGELO J. GENOVA OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS COUNTY OF NASSAU, NASSAU COUNTY LEGISLATURE AND BRUCE A. BLAKEMAN, INDIVIDUALLY AND AS A VOTER AND IN HIS OFFICIAL CAPACITY AS NASSAU COUNTY EXECUTIVE. 
CARL J. KEMPF, III, COUNTY ATTORNEY, EAST GREENBUSH, FOR PLAINTIFFS-RESPONDENTS COUNTY OF RENSSELAER, STEVEN F. MCLAUGHLIN, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS RENSSELAER COUNTY EXECUTIVE AND RENSSELAER COUNTY LEGISLATURE. 
TROUTMAN PEPPER LOCKE LLP, NEW YORK CITY (MISHA TSEYTLIN, OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS JASON ASHLAW, ET AL.
THOMAS E. HUMBACH, COUNTY ATTORNEY, NEW CITY (LARRAINE S. FEIDEN OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS COUNTY OF ROCKLAND AND EDWIN J. DAY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS ROCKLAND COUNTY EXECUTIVE. 
RICHARD B. GOLDEN, COUNTY ATTORNEY, GOSHEN (WILLIAM S. BADURA OF COUNSEL), FOR PLAINTIFFS-RESPONDENTS STEVEN M. NEUHAUS, INDIVIDUALLY AND AS A VOTER AND IN HIS CAPACITY AS ORANGE COUNTY EXECUTIVE, ET AL. 

 Appeals from an order and judgment (one paper) of the Supreme Court, Onondaga County (Gerard J. Neri, J.), entered October 8, 2024. The order and judgment, inter alia, denied the motions of defendants State of New York, Kathleen Hochul, in her capacity as Governor of State of New York, and Dustin M. Czarny, in his capacity as Commissioner of Onondaga County Board of Elections, for summary judgment and declared that the Even Year Election Law is void as violative of the New York State Constitution. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously reversed on the law without costs, the motions are granted, the decretal paragraphs are vacated, and judgment is granted in favor of defendants State of New York, Kathleen Hochul, in her capacity of Governor of State of New York, and Dustin M. Czarny, in his capacity as Commissioner of Onondaga County Board of Elections as follows:
It is ADJUDGED and DECLARED that chapter 741 of the Laws of 2023 does not violate the New York Constitution or the United States Constitution.
Memorandum: In these eight consolidated actions, the respective plaintiffs seek declarations that chapter 741 of the Laws of 2023, known as the Even Year Election Law (EYEL), is unconstitutional because, among other reasons, it violates article IX of the New York Constitution, which grants home rule powers to local governments. Defendant in action No. 1 Dustin M. Czarny, in his capacity as Commissioner of Onondaga County Board of Elections, moved to dismiss the complaint in action No. 1, and defendant in action Nos. 1 through 8, State of New York (State) and defendant in action Nos. 1 through 5 and action Nos. 7 and 8, Kathleen Hochul, in her capacity as Governor of the State of New York (collectively, State defendants), moved to dismiss the complaints in action Nos. 1 through 3 and 5 through 8, and to dismiss the [*4]amended complaint in action No. 4.
After the entry of an order on stipulation of the parties to treat the CPLR 3211 motions to dismiss as CPLR 3212 motions for summary judgment dismissing the complaints and amended complaint, Supreme Court denied the motions, declared the EYEL unconstitutional, and enjoined defendants from enforcing or implementing the EYEL. The State defendants and Czarny appealed to the Court of Appeals, which sua sponte transferred the matter to this Court upon the ground that a direct appeal does not lie when questions other than the constitutional validity of a statutory provision are involved (County of Onondaga v State of New York, 43 NY3d 935, 935 [2025], citing NY Const, art VI, §§ 3 [b] [2]; 5 [b]; CPLR 5601 [b] [2]). We reverse the order and judgment, vacate the decretal paragraphs, and grant the motions of Czarny and the State defendants.
Initially, we reject the assertion of plaintiffs in action Nos. 4 and 6 that the appeals should be dismissed on the ground that the State defendants and Czarny failed to assemble a proper appellate record. We conclude that the failure to include in the record certain documents that were attached to certain plaintiffs' pleadings "does not 'render[ ] meaningful appellate review impossible' " (Eldridge v Shaw, 99 AD3d 1224, 1226 [4th Dept 2012]; see Ruth v Elderwood at Amherst, 209 AD3d 1281, 1284 [4th Dept 2022]; see generally Walker v County of Monroe, 216 AD3d 1429, 1429 [4th Dept 2023]) or substantially prejudice any party (see Bullaro v Ledo, Inc., 219 AD3d 1243, 1243 [1st Dept 2023]; Ruth, 209 AD3d at 1284; see generally CPLR 2001).
The EYEL amended provisions of County Law § 400, Town Law § 80, Village Law § 17-1703-a (4), and Municipal Home Rule Law § 34 (3) such that elections for most county, town, and village officials would be held on even-numbered years, and would no longer be held on odd-numbered years, effective January 1, 2025 (L 2023, ch 741). Exceptions were made for the offices of town justice, sheriff, county clerk, district attorney, family court judge, county court judge, and surrogate court judge — each of which has a term of office provided in the New York Constitution (see NY Const, art VI, §§ 10 [b]; 12 [c]; 13 [a]; 17 [d]; NY Const, art XIII, § 13 [a]) — as well as town and county offices with preexisting three-year terms, all offices in towns coterminous with villages, and all offices in counties located in New York City (L 2023, ch 741). Additionally, a new subsection (h) was added to Municipal Home Rule Law § 34 (3) to preclude county charters from superseding the newly enacted County Law § 400 (8).
The EYEL purports to encourage an increased voter turnout in local elections now scheduled in odd-numbered years, which are years without federal or state-wide elections on the ballot, consistent with the State's public policy of "[e]ncourag[ing] participation in the elective franchise by all eligible voters to the maximum extent" (Election Law § 17-200 [1]), and the mandate of the New York Board of Elections to "take all appropriate steps to encourage the broadest possible voter participation in elections" (§ 3-102 [14]).
Legislative enactments "enjoy a strong presumption of constitutionality . . . [and] parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013], cert denied 571 US 1071 [2013] [internal quotation marks omitted]). Only " 'as a last resort' " will a court declare a statute unconstitutional (Fossella v Adams, — NY3d &mdash, &mdash, 2025 NY Slip Op 01668, *1 [2025]; see Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 555 [1952], affd 344 US 367 [1953]; see also Stefanik v Hochul, 43 NY3d 49, 57-58 [2024]). "The question in determining the constitutionality of a legislative action is therefore not whether the State Constitution permits the act, but whether it prohibits it. 'Obedience must be rendered to statutes which do not offend against such restrictions, even though they may seem to us impolitic' " (Stefanik, 43 NY3d at 58).
Article IX, § 1 of the New York Constitution, titled "Bill of rights for local governments," grants every local government the right to "a legislative body elective by the people thereof" (NY Const, art IX, § 1 [a]), and further grants counties, other than those wholly included within a city, the power to "adopt, amend or repeal alternative forms of county government provided by the legislature" (NY Const, art IX, § 1 [h] [1]). As implemented by article 4 of the Municipal Home Rule Law, that alternative form of government is a county charter (see Municipal Home Rule Law § 32 [4]). A county charter "shall provide for . . . [t]he agencies or officers responsible for the performance of the functions, powers and duties of the [*5]county . . . and the manner of election or appointment, terms of office, if any, and removal of such officers" (§ 33 [3] [b]). In 1963, the State Constitution was amended to include the home rule provisions of article IX and, in the same year, the Legislature adopted article 4 of the Municipal Home Rule Law (see Matter of Baldwin Union Free Sch. Dist. v County of Nassau, 22 NY3d 606, 614-616 [2014]).
Although the home rule amendments to the State Constitution were generally "intended to expand and secure the powers enjoyed by local governments" (Wambat Realty Corp. v State of New York, 41 NY2d 490, 496 [1977]) and "grant[ ] increasingly greater autonomy to local governments" (Matter of Kelley v McGee, 57 NY2d 522, 535 [1982]), the Legislature also included in Municipal Home Rule Law § 34 a list of "[l]imitations and restrictions" on the powers of counties to prepare, adopt and amend their charters, and the EYEL amends that list of limitations and restrictions.
Here, we agree with the State defendants and Czarny that the EYEL does not violate article IX of the New York Constitution. In making that determination, we reject plaintiffs' arguments that article IX,
§ 1 of the New York Constitution grants local governments the constitutional right to set the terms of office for their officers. Indeed, article IX, § 1 says nothing about terms of office for public officials. Instead, it provides, inter alia, that a local government has a right to "a legislative body elective by the people" of each jurisdiction (NY Const, art IX, § 1 [a]) and that a county has a right to "adopt . . . alternative forms of county government" (NY Const, art IX, § 1 [h] [1]), but neither of those provisions gives a county exclusive local control over the manner in which local elections will be held or the specific details of each office.
It is the Municipal Home Rule Law, not article IX, § 1, that requires counties that use charters to specify their officers' terms of office therein (Municipal Home Rule Law § 33 [3] [b]). Of course, the Municipal Home Rule Law is a compilation of statutes, not a constitutional provision. Plaintiffs' contention that article IX, § 1 impliedly gives charter counties the exclusive right to set terms of offices for their public officials is belied by the fact that article IX, § 2 (c) (1) explicitly authorizes the state legislature to adopt general laws, or special laws under certain circumstances, relating to the "terms of office" of local government officials. We cannot conclude that the EYEL, by limiting the power of counties to schedule certain elections in odd-numbered years and aligning the date of federal, state, and most local elections, renders illusory any of the rights and guarantees set forth in article IX, § 1.
According to certain plaintiffs, the State cannot infringe upon their rights to set terms of office for county officials because such rights are set forth in their county charters, which are authorized by article IX, § 1 (h) (1). Plaintiffs cite no authority for the proposition that rights set forth in a county charter are somehow afforded constitutional status and therefore immune from state legislation, and we could find no such authority. If we were to accept that argument, counties could insert into their charters all sorts of rights not included in the constitution and thereby give constitutional status to those rights. We decline to adopt such a novel legal theory.
In the alternative, plaintiffs argue that the EYEL is not a general law and therefore runs afoul of article IX, § 2 of the New York Constitution because the requirements for a special law are not met. We reject that argument as well. Article IX, § 2 provides that local governments have the power to "adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs and government" (NY Const, art IX, § 2 [c] [i]), as well as the power to "adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to . . . [t]he . . . terms of office . . . of its officers and employees" (NY Const, art IX, § 2 [c] [ii] [1]). The Legislature has "the power to act in relation to the property, affairs or government of any local government" either by "general law" or, under certain circumstances, by "special law" (NY Const, art IX, § 2 [b] [2]).
Article IX defines a general law as "[a] law which in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (NY Const, art IX, § 3 [d] [1]). A law affecting only some members of a specified class "is no less general," however, provided "that the classification be defined by conditions common to the class and related to the subject of the statute" (Uniformed Firefighters Assn. v City of New York, 50 NY2d 85, 90 [1980]; see Matter of Harvey v Finnick, 88 AD2d 40, 46-48 [4th Dept [*6]1982], affd 57 NY2d 522 [1982]). A special law is "[a] law which in terms and in effect applies to one or more, but not all, counties, counties other than those wholly included within a city, cities, towns or villages" (NY Const, art IX, § 3 [d] [4]), and thus "specifies conditions that serve only to designate and identify the place to be affected and which creates a purported class in name only" (Matter of Radich v Council of City of Lackawanna, 93 AD2d 559, 564-565 [4th Dept 1983], affd 61 NY2d 652 [1983]).
Although the circumstances that article IX prescribes in order to legislate by special law (NY Const, art IX, § 2 [b] [2] [a], [b]) are not present here, those circumstances are not required "where the State possesses a 'substantial interest' in the subject matter and 'the enactment . . . bear[s] a reasonable relationship to the legitimate, accompanying substantial State concern' " (Greater N.Y. Taxi Assn. v State of New York, 21 NY3d 289, 301 [2013]; see Adler v Deegan, 251 NY 467, 484-491 [1929, Cardozo, J., concurring], rearg denied 252 NY 574 [1929], amended 252 NY 615 [1930]). "A great deal of legislation relates both to 'the property, affairs or government of a local government' and to '[m]atters other than the property, affairs or government of a local government'—i.e., to matters of substantial state concern. Where that is true . . . [the State Constitution] does not prevent the State from acting by special law" (Empire State Ch. of Associated Bldrs. & Contrs., Inc. v Smith, 21 NY3d 309, 317 [2013]; see Radich, 93 AD2d at 565-566).
Here, as the State defendants and Czarny contend, the EYEL is a general law because it applies to all counties outside New York City. Although some counties have appointed rather than elected executives, and one county has legislators who serve three-year terms, every county has at least some elected officials at the county, town or village level. That is to say, there are no counties that have no elections for county, town or village offices. Thus, while the EYEL does not apply to all county officials, some of whom are appointed, it applies to all counties, making it a general law. Moreover, although the EYEL affects only some of the members of the specified class of counties, towns, and villages — i.e., only those counties with elected officers, only those towns and villages that are not coterminous, and only those local offices with terms that are not constitutionally prescribed — we conclude that the classification is reasonable, and that the EYEL "has an equal impact on all members of a rationally defined class similarly situated" (Harvey, 88 AD2d at 48; see Uniformed Firefighters Assn., 50 NY2d at 90-91; Radich, 93 AD2d at 565).
In determining that the EYEL is not a general law, the court in this case relied on Nydick v Suffolk County Legislature (81 Misc 2d 786, 790-791 [Sup Ct, Suffolk County 1975], affd 47 AD2d 241 [2d Dept 1975], affd 36 NY2d 951 [1975]), where the Supreme Court (Stark, J.) determined at Special Term that County Law § 400 (7), which allows the Governor to fill vacancies in certain county elective offices, is not a general law. Although Special Term's ruling was affirmed by the Second Department and the Court of Appeals, Special Term based its determination on several different grounds, and it is unclear whether the appellate courts agreed that County Law § 400 (7) does not constitute a general law. Regardless, the issue here is whether the EYEL is a general law, not whether another provision of County Law
§ 400 considered by the court in Nydick is a general law. Because neither Supreme Court (Neri, J.) nor plaintiffs identify a single county outside of New York City to which the EYEL does not apply, we conclude that it is a general law. In light of our determination, it is academic whether the EYEL meets the conditions of a valid special law under article IX, § 2.
We also agree with the State defendants and Czarny that the so-called "savings clause" found in article IX, § 3 of the New York Constitution does not render the EYEL unconstitutional. That clause, which states that the provisions of Article IX "shall not affect any existing valid provisions of acts of . . . local legislation and such provisions shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this constitution" (NY Const, art IX, § 3 [b]), clarifies that the adoption of Article IX did not itself invalidate then-existing legislation (see generally Baldwin Union Free Sch. Dist., 22 NY3d at 615-616), and does not preclude the Legislature from adopting a law such as the EYEL, which supersedes local legislation "in accordance with the provisions" of article IX (NY Const, art IX, § 3 [b]). Plaintiffs' interpretation of the savings clause—which is that all local laws in effect when article IX was adopted are insulated from any subsequent state legislation—would render superfluous the phrase "shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this constitution" set forth in the savings clause (id.).
We further agree with the State defendants and Czarny that none of plaintiffs' remaining constitutional challenges to the EYEL have merit. The assertion that the EYEL violates the Takings Clauses of the Federal and State Constitutions is without merit because an officeholder has "no . . . property right in the office" (Lanza v Wagner, 11 NY2d 317, 324 [1962], cert denied 371 US 901 [1962]; see Tyk v Brooklyn Community Bd. 12, 166 AD3d 708, 709 [2d Dept 2018]). The doctrine of legislative equivalency — which provides that repeal or modification of a statute "requires a legislative act of equal dignity and import" (Matter of Moran v La Guardia, 270 NY 450, 452 [1936]) — has no application here because any right being abridged by the EYEL is statutory in nature, not constitutional.
Plaintiffs' other constitutional challenges arising under the Federal and State Constitutions — asserting that the EYEL violates the rights of free speech and association, the right to equal protection of the laws, the right to substantive due process, and the right to vote — must be judged based on "the extent to which [the EYEL] directly infringes upon First and Fourteenth Amendment rights" and the associated rights under the New York Constitution (Matter of Walsh v Katz, 17 NY3d 336, 344 [2011]; see Burdick v Takushi, 504 US 428, 433-434 [1992]; Anderson v Celebrezze, 460 US 780, 788 [1983]). On this record, we conclude that the EYEL, which changes only the timing of certain local elections and applies equally to all participants in the political process, affects these rights "only in an incidental and remote way" (Walsh, 17 NY3d at 346). The EYEL's " 'reasonable, nondiscriminatory restrictions' " are justified by the State's " 'important regulatory interests' " (Burdick, 504 US at 434; see generally SAM Party of New York v Kosinski, 987 F3d 267, 274 [2d Cir 2021]; Matter of Brown v Erie County Bd. of Elections, 197 AD3d 1503, 1505 [4th Dept 2021]).
Finally, we agree with the State defendants and Czarny that there is no need to delay the application of the EYEL until the 2027 election cycle. Although the EYEL truncates the terms of certain local offices on the 2025 ballot by one year, that change has no obvious bearing on a voter's decision to sign a designating petition and does not prejudice any candidate as against an opponent. Thus, this case is entirely dissimilar from Matter of Sherrill v O'Brien, in which the Court of Appeals declined to address the constitutionality of the apportionment of election districts one month before a general
election due to the possibility of "inextricable confusion and chaos"
(186 NY 1, 3 [1906]).
Entered: May 7, 2025
Ann Dillon Flynn
Clerk of the Court